IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JOAQUIN CARDONA-SANDOVAL,

**Plaintiff**

v.

MR. LEDEZMA, et al.,

**Defendants**

**CIVIL NO.** 07-1004 (JAG)

**OPINION AND ORDER**

GARCIA-GREGORY, D.J.

Before the Court is Mr. Ledezma ("Ledezma"), Dr. Rivera, Dr. Medina ("Medina"), Mr. Rivera, Prison Guards and Prison Staff's (collectively, "Defendants") Motion to Dismiss. (Docket No. 43). For the reasons set forth below, the motion is hereby **GRANTED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

On September 18, 2006, Plaintiff Joaquín Cardona Sandoval ("Plaintiff") filed the instant *pro se* complaint in the District Court for the Northern District of Ohio. (Docket No. 5-2). The complaint alleges that the U.S. Attorney General, the BOP Director, and the aforementioned federal officials and employees of the Bureau of Prisons ("BOP") Metropolitan Detention Center

Civil No. 07-1004 (JAG)                                                    2

("MDC") in Guaynabo, Puerto Rico, acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment.

In the complaint, Plaintiff alleges that on March 22, 2005, he sent a "cop-out"[1] request to Dr. Rivera, asking for medical treatment for pain around his left pectoral. (Docket No. 5-2, Exhibit 1). He claims that he had previously submitted two similar requests that went unanswered. Plaintiff avers that on March 23, 2005, he received a response from Dr. Rivera stating that he had been scheduled for a medical appointment the following week. However, Plaintiff claims that he never saw his name on the "call out"[2] list for medical appointments. Plaintiff alleges that Prison Staff in his unit had the responsibility to inform Plaintiff of his appointment time, but failed to do so.

Plaintiff subsequently sought administrative remedies against the MDC medical department through a series of formal grievances and requests. (Docket No. 5-2, Exhibits A-H). On July 11, 2005, Plaintiff submitted a BOP form BP-9 "Request for Administrative Remedy," alleging that the "Medical Department [had] been deliberately indifferent towards [his] serious medical needs." (Docket No. 5-2, Exhibit A). On August 26, 2005,

---

[1] A cop-out is a request for medical attention by the MDC medical department, submitted to the prisoner's Unit Manager.

[2] A call-out is a list where MDC prisoners' medical appointments are displayed.

Civil No. 07-1004 (JAG)                                                            3

Plaintiff sent a request to his unit manager for an update on the status of the BP-9 grievance. On August 29, 2005, the unit manager issued a response stating that there was no record of Plaintiff's BP-9. (Docket No. 5-2, Exhibit B). Plaintiff alleges that the BP-9 form was not received because Mr. Rivera did not file it.

On August 29, 2005, Plaintiff submitted a second BP-9. (Docket No. 5-2, Exhibit C). On September 28, 2005, MDC Warden Ricardo E. Chávez ("Chávez") issued a response stating that Plaintiff had already received treatment for his condition on August 1, 2005. (Docket No. 5-2, Exhibit D). Plaintiff claims that on August 1, 2005 he received Ibuprofen, but that no x-ray or other medical examinations were performed.

On October 10, 2005, Plaintiff appealed Chávez's determination by submitting a BP-10 form to the Regional Director of the BOP. (Docket No. 5-2, Exhibit E). In his appeal, Plaintiff indicates that he has intensive pain around his left pectoral and that he fears that the condition may be cancer-related. On November 14, 2005, the Regional Director replied to the appeal and stated that Plaintiff had been scheduled for a medical evaluation on March 28, 2005, shortly after his cop-out request, but that he failed to report for the appointment. (Docket No. 5-2, Exhibit F). In this reply, the Regional Director reminded Plaintiff that he had received various medical

evaluations since the missed appointment and made no complaints related to his pectoral. Furthermore, the Regional Director stated that on November 2, 2005, Plaintiff underwent a medical evaluation of the area which did not yield any objective findings. The Regional Director determined that there was no evidence supporting Plaintiff's allegations. Finally, the Regional Director gave instructions as to how Plaintiff could appeal this determination to the BOP Office of General Counsel in Washington, D.C.

As stated above, Plaintiff attests that he left MDC Guaynabo on December 2, 2005, without receiving effective medical treatment for his still-painful condition. On February 23, 2006, Plaintiff submitted a final administrative appeal to the BOP. (Docket No. 5-2, Exhibit G). On April 3, 2006, the office of National Inmate Appeals issued a denial of Plaintiff's appeal. (Docket No. 5-2, Exhibit H).

On September 18, 2006, Plaintiff filed the instant action in the United States District Court for the Northern District of Ohio. On December 26, 2006, the Honorable James S. Gwin dismissed with prejudice the claims against the Attorney General and the BOP Director. (Docket No. 5-3). Judge Gwin then found that the Northern District of Ohio was not the proper venue for Plaintiff's remaining claims. Namely, Judge Gwin held that because all of the events giving rise to the claims took place

in Puerto Rico, the District Court for the Northern District of Ohio could not exercise personal jurisdiction over Defendants. As a result, Judge Gwin transferred the present case to this Court. (Docket No. 5).

On May 8, 2007, the remaining Defendants filed the Motion to Dismiss now before the Court. Defendants' dismissal request is premised on the following grounds: (1) Plaintiff's claims are time-barred; (2) the claims against Ledemza and Dr. Rivera should be dismissed because *respondeat superior* liability does not apply in actions brought pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971); (3) the claims against federal employees in their official capacities should be dismissed because they are barred by sovereign immunity; (4) all claims should be dismissed on the grounds that Plaintiff's complaint fails to state a <u>Bivens</u> claim because the allegations do not rise to the level of an Eighth Amendment violation; and, (5) all federal defendants are entitled to qualified immunity. (Docket No. 43). Plaintiff did not oppose the motion.

On June 29, 2009, the Court entered an Opinion and Order granting the Motion to Dismiss. (Docket No. 44). Plaintiff appealed the judgment because the motion was never notified to him. The First Circuit vacated the judgment and remanded the case for it found that, even though this Court had no way of

Civil No. 07-1004 (JAG)                                              6

knowing about the notice problem before it disposed of the motion, there was no indication in the docket that Plaintiff had been properly notified and Defendants were unable to provide a copy of the certified mail receipt. (Docket No. 53).

After receiving the First Circuit's mandate on November 3, 2010, the Court granted Plaintiff until November 29, 2010 to amend his complaint and/or file his opposition to the Motion to Dismiss. (Docket No. 54). Plaintiff requested an extension of time to comply with the order and his request was granted. (Docket Nos. 55, 56). However, instead of amending his complaint or opposing the motion, Plaintiff filed a Motion Requesting the Appointment of Counsel. (Docket No. 57). The Court then ordered him to comply with Local Rule 83L in order to properly evaluate his request for an attorney. After receiving his request in accordance with the Local Rules, the Court ordered the Clerk to designate an attorney from the panel of *pro bono* attorneys. (Docket No. 63). Counsel was thus appointed on February 3, 2011. (Docket No. 64).

On April 20, 2011, the appointed attorney requested withdrawal from the case and the appointment of another *pro bono* counsel for Plaintiff. The Court granted the attorney leave to withdraw, but denied the appointment of a second *pro bono* attorney. (Docket No. 70).

Several days before the appointment of counsel took place, however, Plaintiff had filed a response to the Motion to Dismiss. (Docket No. 60). He argued that the Court must be less stringent in its application of the standards regarding motions to dismiss given that he is a *pro se* litigant and that, in any case, the allegations contained in the complaint are sufficient to survive Defendants' motion. He avers that he has suffered and continues to suffer irreparable harm due to Defendants' deliberate indifference to his constitutional rights.

## STANDARD OF REVIEW

In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court held that to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief." Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95-96 (1st Cir. 2007) (quoting Twombly, 550 U.S. at 559). While Twombly does not require heightened fact pleading of specifics, it does require enough facts to "nudge [plaintiffs'] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. Accordingly, in order to avoid dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555.

In Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the Supreme Court upheld Twombly and clarified the principles that must

guide this Court's assessment of the adequacy of the plaintiff's pleadings when evaluating whether a complaint can survive a Rule 12(b)(6) motion. See Iqbal, 129 S.Ct. at 1949-50. The court must identify any conclusory allegations in the complaint as such allegations are not entitled to an assumption of truth. Id. at 1949. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). A claim has facial plausibility when the pleaded facts allow the court to reasonably infer that the defendant is liable for the specific misconduct alleged. Id. at 1949, 1952. Such inferences must be more than a sheer possibility and at least as plausible as any obvious alternative explanation. Id. at 1949, 1951. Plausibility is a context-specific determination that requires the court to draw on its judicial experience and common sense. Id. at 1950.

In a recent case, Ocasio-Hernández v. Fortuño Burset, No. 09-2207, 2011 U.S. App. LEXIS 6763 (1st Cir. April 1, 2011), the First Circuit analyzed and distilled several principles from the Supreme Court decisions in Twombly and Iqbal. It thus boiled down the inquiry a Court must perform while resolving a motion to dismiss under Fed.R.Civ.Proc. 12(b)(6) to a two-pronged approach. The first step involves the process of identifying and

disregarding the threadbare recitals of the elements of a cause of action and/or the legal conclusions disguised as fact. Occasion-Hernández, 2011 U.S. App. LEXIS 6763 *23-24. The second step involves treating the non-conclusory factual allegations as true, even if seemingly incredible, and determine if those "combined allegations, taken as true, state a plausible and not merely a conceivable, case for relief." Id. at *24 (quoting Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010).

The First Circuit warned that even if determining the plausibility of a claim "requires the reviewing court to draw on its judicial experience and common sense," it must not attempt to forecast the likelihood of success even if recovery is remote and unlikely. Id. at *25 (quoting Iqbal, 129 S. Ct. at 1950) (other citations omitted). It further stated that, "[t]he relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the Court to draw from the facts alleged in the complaint. Id.

Finally, because Plaintiff appears *pro se*, the Court reads his complaint generously. Haines v. Kerner, 404 U.S. 519, 520 (1972). This Court recognizes that *pro se* pleadings are "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). Nonetheless, "even a *pro se* complaint must plead 'factual

matter' that permit the Court to infer 'more than the mere possibility of misconduct.'" Atherton v. District of Columbia, 567 F.3d 672 (D.C. Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1950).

**DISCUSSION**

A.  Bivens Claim

As previously stated in the Opinion and Order issued by this Court on this same motion on June 29, 2010, the present suit is a civil rights action brought pursuant to 42 U.S.C § 1983 and Bivens to redress the alleged deprivation of Plaintiff's Eighth Amendment rights by federal agents acting under the color of federal law. As section 1983 provides a cause of action against state rather than federal officers, the Court understands the present action as one brought pursuant to Bivens.

Under Bivens, "a person may sue a federal official in his or her individual capacity for damages arising out of a constitutional violation committed under color of federal law." Santoni v. Potter, 369 F.3d 596, 598 (1st Cir. 2004). The Supreme Court has established that the victim of a constitutional violation by a federal agent has a right to recover damages against the official in federal court despite the absence of any statute conferring such a right. Carlson v. Green, 446 U.S. 14, 18 (1980).

Having determined that this is a Bivens action and there being no question that this Court has subject matter jurisdiction over Plaintiff's claims, the Court turns to the question of whether Plaintiff timely presented his claims.

B.   Timeliness of Claims

The statute of limitations applicable to a Bivens claim is determined by the state tort statute. Moran Vega v. Cruz Burgos, 537 F.3d 14, 20 (1st Cir. 2008). Hence Bivens actions arising in this District, have a one year statute of limitations. Id. Although state law determines the applicable limitations period, federal law determines when the limitations period begins to accrue. Id. Under federal law, the limitations period for a Bivens claim accrues "when a plaintiff knows or has reason to know of the injury which forms the basis of the action." Id. A plaintiff is deemed to have knowledge of the injury "at the time of the act itself and not at the point that the harmful consequences are felt." Guzman Rivera v. Rivera-Cruz, 29 F.3d 3, 5 (1st Cir. 1994).

Defendants argue that the present suit is time barred because Plaintiff did not file his complaint until more than one year after he learned of his injury. Defendants contend that the limitations period began to accrue on March 22, 2005, because on that date Plaintiff knew of his alleged medical condition and began seeking treatment. The Court agrees with Defendants that

because Plaintiff's efforts to receive appropriate medical care were allegedly ignored beginning on March 22, 2005, the one year statute of limitations began to accrue on that date. However, in the case at bar, we find that the one year limitations period was tolled pursuant to the Puerto Rico tolling provision.

Just as state law limitations provisions apply in a Bivens claim, state law also controls the tolling of the limitations period. Hardin v. Straub, 490 U.S. 536, 543 (1989). Puerto Rico's tolling provision, Article 1873 of the Civil Code, P.R. Ann. tit. 31, § 5303 (2011), provides that "[p]rescription of actions is interrupted by their institution before the courts, by extrajudicial claim of the creditor, and by any act or acknowledgment of the debt by the debtor." See Rodríguez Narvaez v. Nazario, 895 F.2d 38, 43-44 (1st Cir. 1990). Pursuant to said article, each such interruption that is filed within one year of a previous interruption serves to reset the limitations period. Id. at 45.

For an extrajudicial claim such as an administrative appeal to toll the limitations period, the claim must: (1) "be made by the holder of the substantive right (or his legal representative)"; (2) "be addressed to [the defendant], not to a third party"; and, (3) "require or demand the same conduct or relief ultimately sought in the subsequent lawsuit." Morán Vega, 537 F.3d at 20. "Consequently, an administrative claim will toll

the limitations period only if it puts forth an 'identical cause[] of action,' and only if '[t]he relief sought in the extrajudicial claim [is] the same as that later sought in court.'" Id. (quoting Rodríguez Narvaez, 895 F.2d at 43, 46) (alterations in the original) (internal citations omitted). The purpose of this requirement is to give "the defendants the requisite fair notice that [they] might be called upon to defend" against a particular cause of action. Rodríguez-García v. Municipality of Caguas, 354 F.3d 91, 99 (1st. Cir. 2004)(internal citations and quotation marks omitted).

   Hence, the Court must determine whether Plaintiff's pursuit of administrative remedies tolled the limitations period and, if so, on what date the one year limit began to run anew. The Court approaches the issue of tolling mindful that "the Supreme Court of Puerto Rico has stated that in view of the importance of 'extinctive prescription' in the civil law traditions, tolling provisions must be interpreted restrictively against the person invoking their protection." Rodríguez-Narvaez, 895 F.2d at 43 (citing Díaz de Diana v. A.J.A.S. Ins. Co., 110 P.R.R. 602, 607 n.1 (P.R. 1980)).

   Defendants admit that the limitations period could be tolled in the present case. Defendants argue that the limitations period began to run anew on July 11, 2005, the date on which Plaintiff filed his initial BP-9 appeal. Defendants

further posit that the limitations period expired on July 11, 2006 and, therefore, Plaintiff's complaint is time barred since it was filed September 18, 2006.

In order for the limitations period to be tolled, the Plaintiff must have filed an administrative appeal sufficient to put Defendants on notice of the present action within one year of March 22, 2005. Plaintiff filed four administrative appeals with the BOP between July 11, 2005 and February 23, 2006. Each was submitted within the limitations period. In each, Plaintiff claimed that MDC's medical department acted with deliberate indifference toward his serious medical needs.

This Court notes that Plaintiff did not request money damages in his administrative appeals. However, money damages are not available under the BOP administrative remedy regime. This Court finds, nonetheless, that the language employed by Plaintiff in his administrative appeals -deliberate indifference to serious medical needs - tracks the legal standard relevant to the present action. Furthermore, the final administrative appeal, submitted by Plaintiff to the BOP Administrative Remedy Section on February 23, 2006, makes express reference to <u>Bivens</u> in the context of allegations of deliberate indifference to serious medical needs. Therefore, we hold that the final appeal gave the defendants the requisite fair notice of a subsequent <u>Bivens</u> claim for damages.

In sum, Plaintiff's administrative appeal of February 23, 2006 tolled the limitations period. Hence, the one year statute of limitations began to acrue anew on that date and expired on February 23, 2007. Consequently, the present action was timely filed on September 18, 2006.

C. Claims against Defendants in their Official Capacities

Bivens provides for liability of federal officers only in their individual capacities. Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1st. Cir. 2000). Any claims brought under Bivens against federal agents in their official capacities must be dismissed. Pérez Olivo v. Gonzólez, 384 F. Supp. 2d 536, 543 (D.P.R. 2005). Accordingly, all claims against Defendants in their official capacities must be dismissed with prejudice.

D. Claims against Supervisory Officials Ledezma and Dr. Medina

"[R]espondeat superior is not a viable theory of Bivens liability." Ruiz Rivera, 209 F.3d at 28. Rather, supervisory liability in a Bivens action "exists only where '(1) there is subordinate liability and (2) the supervisor's action or inaction was 'affirmatively linked' to the constitutional violation caused by the subordinate." Pérez Olivo, 384 F. Supp. 2d at 543. (quoting Aponte Matos v. Toledo Davila, 135 F. 3d 182, 192 (1st Cir. 1998)). An affirmative link exists where a supervisor's alleged actions amount to "encouragement,

condonation or acquiescence, or gross negligence amounting to deliberate indifference." Aponte Matos, 135 F.3d at 192.

Here, Plaintiff has made no allegations against Ledezma, a former MDC Warden, or against Dr. Medina, MDC hospital coordinator. The complaint does not reference any action or inaction by these supervisory officials that suggests an affirmative link between them and the challenged conduct. While the Court reads Plaintiff's pleadings liberally, it will not infer allegations of wrongdoing against a party where none appear. Accordingly, the claims against Ledezma and Dr. Medina must be dismissed with prejudice.

E. Sufficiency of Eighth Amendment Claim

It is well established that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)).

However, not every claim that a prisoner has been inadequately diagnosed or treated constitutes a constitutional violation. Id. at 105. An allegation of a merely negligent failure to provide adequate care is insufficient. Id. at 105-06.

Rather, deliberate indifference "defines a narrow band of conduct" in which the "care provided [is] 'so inadequate as to shock the conscience.'" Feeney v. Correctional Medical Services, Inc., 464 F.3d 158, 162 (1st Cir. 2006) (quoting Torraco v. Maloney, 923 F.2d 231, 235 (1st Cir. 1991)). "When a plaintiff's 'allegations simply reflect a disagreement on the appropriate course of treatment[, s]uch a dispute with an exercise of professional judgment may present a colorable claim of negligence, but it falls short of alleging a constitutional violation.'" Id. (quoting Ferranti v. Moran, 618 F.2d 888, 891 (1st. Cir. 1980)) (alteration in the original). In order for a prisoner to state a claim for inadequate medical care, he must allege that the "treatment received [was] so clearly inadequate as to amount to a refusal to provide essential care." Layne v. Vinzant, 657 F.2d 468, 474 (1st Cir. 1981)(internal citations and quotation marks omitted).

In determining whether Plaintiff's *pro se* complaint stated a sufficient Eighth Amendment claim, this Court considers the factual allegations made in the complaint and in the administrative appeals attached thereto. Thus the allegations made in the attached appeals are incorporated into Plaintiff's pleadings for the purposes of ruling on the present motion to dismiss. See, e.g., Stein v. Royal Bank of Canada, 239 F.3d 389, 392 (1st. Cir. 2001) (holding that a district court may properly

consider documents attached to a complaint in its review of a motion to dismiss).

The non-conclusory factual allegations in Plaintiff's pleadings may be stated as follows: (1) Dr. Rivera failed to respond to Plaintiff's first two cop-out requests; (2) MDC Staff failed to add Plaintiff's name to the call out list or to inform Plaintiff of his March 28, 2008 medical appointment; (3) MDC doctors failed on multiple occasions to adequately diagnose and treat Plaintiff's intensively painful condition, which he feared was cancer-related; although Plaintiff received muscle relaxant and painkillers, which did not remedy the condition, no x-ray examination or other comparable diagnostic tests were performed; and, (4) Mr. Rivera did not file Plaintiff's first BP-9 appeal.

Plaintiff alleges that he suffered from intense pain on a daily basis from a condition that he feared was cancer-related, and that his requests for effective medical care were delayed and ignored. However, Plaintiff also states that he was scheduled for a medical exam and did ultimately receive medical attention on a number of occasions. Even liberally construed in the light most favorable to the Plaintiff, these allegations are essentially a dispute about the treatment provided. Plaintiff's "subjective characterizations" of deliberate indifference, in the absence of corresponding factual allegations, are not

entitled to an assumption of truth. See <u>Dewey v. Univ. of New Hampshire</u>, 694 F.2d 1, 3 (1st Cir. 1982).

Although it is clear that Plaintiff was frustrated with the level of attention his complaints received from Prison Staff and various doctors, we find that Plaintiff did not sufficiently plead that Defendants' conduct rises to the level of a deliberate refusal to provide essential care. Plaintiff suggests that conduct of Prison Staff may have unnecessarily delayed his access to medical attention. Nonetheless, Plaintiff has not alleged conduct beyond the level of negligence. Therefore, the alleged conduct does not fall within the narrow zone of deliberate indifference that shocks the conscience. Because Plaintiff's pleadings do not state a claim for a violation of the Eighth Amendment, his claims must be dismissed.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' Motion to Dismiss. (Docket No. 43). Consequently, all of Plaintiff's claims against Defendants shall be dismissed with prejudice. Judgment shall be entered dismissing the complaint.

IT IS SO ORDERED.

In San Juan, Puerto Rico this 15th day of June, 2011.

<u>s/ Jay A. García Gregory</u>
JAY A. GARCIA GREGORY
U.S. DISTRICT JUDGE